COLIN MURCHISON, BY HIS NEXT FRIEND, JEAN B. MURCHISON, PLAIN-
TIFF, v. EDWARD JOYNER POWELL, DEFENDANT

AND

JEAN B. MURCHISON, PLAINTIFF, v. EDWARD JOYNER POWELL,
DEFENDANT.

(Filed 22 March, 1967.)

1. **Trial § 21—**

On motion to nonsuit, the evidence offered by plaintiff must be taken as true and defendant's evidence in conflict therewith must be disregarded.

2. **Automobiles § 14—**

The two foot clearance required by G.S. 20-149 applies to the overtaking and passing of another vehicle, not a horse subject to fright by a sudden noise.

3. **Automobiles § 41n—**

Evidence that defendant motorist saw two boys riding their horses on a narrow and confined shoulder of the road and, at a speed in excess of that permitted by statute, undertook to pass so close to one of the horses that the motorist should have reasonably foreseen that the sound would frighten the horse, together with evidence that the vehicle struck the horse while the horse was on the shoulder of the road, resulting in the death of the horse and injury to the rider, *is held* sufficient to overrule defendant's motion to nonsuit.

4. **Automobiles § 44; Negligence § 25—**

Riding a trotting horse upon a shoulder of a highway is not negligence *per se*, and where there is no evidence that the rider did or failed to do anything which caused the horse to move off the shoulder of the road or that he knew of any propensity of the horse to shy at the approach of motor vehicles, it is not error to refuse to submit the issue of the contributory negligence of the rider in causing a collision occurring with a motor vehicle when the driver attempted to overtake and pass the animal at excessive speed, the natural reaction of the horse to the noise of the overtaking vehicle being foreseeable and therefore not an intervening cause.

5. **Trial § 37—**

The misstatement of the contention of a party must be brought to the trial court's attention in apt time in order for exception thereto to be considered.

6. **Appeal and Error § 20—**

A defendant may not complain of a correct statement of law in regard to sudden emergency, even though the doctrine is inapplicable, where he contends it does apply.

7. **Automobiles § 38—**

Persons having sufficient opportunity to observe a vehicle and form an opinion as to its speed are competent to give their opinion based upon their observation, and the fact that two of the witnesses are young boys

who had never driven an automobile goes to the weight of their testimony but not its competency.

APPEAL by defendant from *Cohoon, J.,* at the 12 December 1966 Civil Session of NASH.

The minor plaintiff, Colin, fourteen years of age, was riding a horse upon the narrow shoulder of State Highway No. 43, near Rocky Mount, about 4 o'clock in the afternoon. The defendant, driving his truck in the same direction, overtook and attempted to pass the horse and rider. The truck and horse collided. As a result, the horse was killed and Colin was thrown to the pavement of the road and injured. He alleges that the defendant was negligent in that he drove at an excessive speed, failed to keep a lookout, failed to sound his horn and, in attempting to pass, drove closer beside the horse than was reasonable and prudent. His mother, a widow, sues in a separate action for loss of her son's services and for medical expenses which she has incurred, or may incur, as a result of his injuries, her allegations as to negligence being the same as those contained in the complaint of the boy.

In each case the defendant denies that he was negligent and, by way of further defense, alleges that when the truck was about ten feet behind the horse, the horse jumped suddenly from the shoulder into the road and struck the right front fender of the truck. He alleges this was the sole proximate cause of the collision. Alternatively, he alleges contributory negligence by the boy, either in causing the horse to go onto the paved highway in the path of the truck or in riding the horse upon a narrow shoulder of a busy highway, knowing the horse had a tendency to shy when passed by vehicles.

The two cases were consolidated for trial. The court refused to submit an issue of contributory negligence tendered by the defendant. The jury found that Colin was injured by the negligence of the defendant as alleged in the complaint and awarded damages to him and his mother. Judgment was entered accordingly and the defendant appeals. The two cases were argued as one in this Court pursuant to the motion of the defendant for such consolidation.

The plaintiffs offered several witnesses. Their testimony, in addition to medical testimony and the testimony of the mother as to the extent of the injuries and the expenses incurred, may be summarized as follows:

Colin and his companion, age twelve, were mounted on separate horses riding upon the shoulder of the highway, Colin being in front. His companion observed the truck approaching and called to Colin, informing him of that fact. The truck passed the companion

at a speed of approximately 45 miles per hour. (The speed limit was admitted to be 35 miles per hour.) The horses were going at a fast trot as it had started to rain. As the truck approached and overtook the boys on their horses, the horses were on the dirt shoulder between the pavement and the side ditch, this shoulder being about five feet in width. (A photograph offered by the defendant shows that the ditch had a substantial bank on the far side, and at the top of this bank was a wire fence; mail boxes were erected in the ditch on either side of the point of impact.) The horse was 30 to 32 inches wide. When the truck and the horse collided, the horse fell in the ditch and the boy fell so that his head struck upon the pavement.

The horn of the truck was not blown. The horse was on the shoulder of the road when struck. The body of the truck, consisting of two-by-four uprights attached to a flat bed, protruded beyond the wheels. The horse was hit at a point on its left hip at about the height of the truck body. Horse hair and a bit of blood were observed near the center of the body of the truck. A short distance before the point of impact the truck was running close to the edge of the pavement, "better than 35" miles per hour.

An adjoining landowner saw the impact. He did not observe the horse shy. The impact threw it up and around. In his opinion the truck was driving in excess of 50 miles per hour at that instant. He observed that the wheels were sliding. The horse fell into the ditch 75 feet from the point of impact. The truck stopped 150 feet beyond the horse. Immediately after the impact this witness went to the scene and observed tire marks, 75 feet in length, which came to an abrupt stop three or four inches from the edge of the pavement near the point of impact.

Evidence offered by the defendant is to the following effect:

There was no protrusion of the cab or body of the truck beyond the wheels except that the front fenders extended out about two inches. There are no fenders over the back wheels.

The defendant saw the horses on the shoulder. He did not blow his horn. When he got within ten feet of Colin's horse, it seemed to shy to its left and jumped out onto the pavement. He "snatched to the left to keep from hitting it," but the horse came into the body of the truck. He did not apply his brakes. After the impact he stopped and then pulled off the highway to his right, stopping about 100 to 125 feet down the road. His first stop was 20 feet from the point of impact.

As he approached the horses, the right side of his truck was 12 inches from the right edge of the pavement. His speed was then 25 to 30 miles per hour. At the time of the impact his left front wheel

was to the left of the center line, and his right front wheel was three feet from the right edge of the pavement. He did not at any time skid his wheels. After the accident he observed skid marks on the pavement.

The horse first struck the right front fender behind the front wheel. Just prior to the horse's shying, the truck was 10 to 12 inches from the edge of the pavement and the horse was on the shoulder about a foot from the pavement. The pavement was 18 to 20 feet wide.

The defendant was meeting a pickup truck headed in the opposite direction. In the opinion of the driver of this truck and of a passenger therein, the defendant was going about 30 to 35 miles per hour, and the horse appeared to jump right into the side of the truck, whereupon the defendant cut to his left and then back on his side of the road and stopped.

In the opinion of the investigating patrolman, the pavement was 20 to 22 feet in width.

The defendant assigns as error the denial of his motion for judgment of nonsuit, the refusal of the court to submit an issue of contributory negligence, numerous rulings upon the admission of evidence, and various portions of the court's charge to the jury.

*Thorp & Etheridge for defendant appellant.*
*Battle, Winslow, Scott & Wiley for plaintiff appellee.*

LAKE, J. There was no error in the overruling of the defendant's motion for judgment of nonsuit. Upon such a motion, the evidence offered by the plaintiff must be taken to be true and that offered by the defendant in conflict therewith must be disregarded. *Lewis v. Barnhill,* 267 N.C. 457, 461, 148 S.E. 2d 536; *Dixon v. Edwards,* 265 N.C. 470, 144 S.E. 2d 408. So considered, the evidence is sufficient to support a finding that the defendant saw the boys riding their horses on a narrow and confined shoulder of the road, and, at a speed in excess of that permitted by the statute, undertook to pass so close to the horse ridden by the minor plaintiff that it should reasonably have been foreseen by him that the sound of the overtaking vehicle would frighten the horse. The two foot clearance required by G.S. 20-149 applies to the overtaking and passing of another vehicle, not a horse subject to fright by a sudden noise. Even as to the passing of an inanimate vehicle, this is a minimum requirement by the express terms of the statute. The defendant's statement that after the horse shied, he "snatched" the truck to the left and crossed the center line indicates strongly that he could with safety have gone further to the left before overtaking the horse.

The natural reaction of the horse to the noise of the truck overtaking him cannot be regarded as an intervening cause since it should have been foreseen by the defendant as a likely result of his effort to pass so close to the animal. *Nance v. Parks,* 266 N.C. 206, 146 S.E. 2d 24; *Garner v. Pittman,* 237 N.C. 328, 75 S.E. 2d 111, 65 C.J.S., Negligence, § 114.

There was no error in the refusal to submit an issue of contributory negligence to the jury. Riding a trotting horse upon the shoulder of a highway is not negligence *per se,* and there was no evidence whatever in the record to show that the minor plaintiff did or failed to do anything which caused the horse to move off of the shoulder of the road, or that he knew of any propensity of this horse to shy at the approach of motor vehicles, if indeed the horse had such a propensity.

The court in its charge told the jury that the defendant contended he was confronted by a sudden emergency and, thereupon, instructed the jury correctly as to the rule of law applicable to the conduct of one confronted by such emergency. The exception to this portion of the charge cannot be sustained. If the court misstated the contention of the defendant, that circumstance should have been called to the attention of the court before the jury retired so as to enable the court to correct the mistake. *Dickson v. Queen City Coach Co.,* 233 N.C. 167, 63 S.E. 2d 297; *Steele v. Coxe,* 225 N.C. 726, 36 S.E. 2d 288. The record shows no objection by the defendant to this statement of his contention before the jury retired to consider its verdict. While the doctrine of sudden emergency has no application to the facts disclosed in this record, since there is nothing to show that the collision and resulting injury was brought about by any act of the defendant after the horse jumped from a safe place on the shoulder, if it did so jump, and therefore this instruction should not have been included in the court's charge, the error in giving this instruction does not appear to have been prejudicial to the defendant. The defendant's argument to the jury does not appear in the record. If the court was correct in its statement as to the defendant's contention concerning the doctrine of sudden emergency, the defendant cannot complain that a correct statement of the rule with reference to that doctrine was included in the charge.

We have carefully considered each assignment of error concerning alleged failures of the court to instruct the jury and find no merit therein. The court's charge to the jury, considered as a whole, complies with the requirements of G.S. 1-180. It presented the law applicable to the issues clearly to the jury and the jury determined those issues in favor of the plaintiffs.

We have likewise considered each assignment of error relating to the admission of evidence and find all of these to be without merit. The witnesses who testified as to the speed of the defendant's truck had sufficient opportunity to observe it and form an opinion as to its speed. The fact that two of them were young boys who had never driven an automobile would go to the weight of their testimony but would not make it incompetent.

No error.